# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JULIO CHRISTIAN,                  :
    **Plaintiff**          :
                        :          **No. 3:18-cv-1363**
    **v.**              :
                        :          **(Judge Rambo)**
MARK GARMAN, *et al.*,           :
    **Defendants**        :

## MEMORANDUM

This matter is before the Court pursuant to the motion for summary judgment filed by Defendants Mark Garman ("Garman"), Herbert Probst ("Probst"), Delbert Breese ("Breese"), and John McHenry ("McHenry"). (Doc. No. 18.) *Pro se* Plaintiff Julio Christian filed his brief in opposition on May 6, 2019. (Doc. No. 23.) To date, Defendants have neither filed a reply brief nor a motion seeking an extension of time to do so. Accordingly, because the time period for filing a reply brief has expired, the motion for summary judgment is ripe for disposition.

## I.     BACKGROUND

Plaintiff, who is currently incarcerated at the State Correctional Institution Rockview in Bellefonte, Pennsylvania ("SCI Rockview"), initiated the above-captioned action by filing a complaint pursuant to 42 U.S.C. § 1983 against Defendants in the Court of Common Pleas for Centre County, Pennsylvania, on April 18, 2018. (Doc. No. 2 at 4-5.) On April 24, 2018, that court dismissed the complaint, noting that it failed to set forth any facts or claims for relief. (Doc. No.

2-1.)  Plaintiff subsequently requested leave to file an amended complaint.  (Doc. No. 2-2.)  On May 24, 2018, the Court of Common Pleas granted Plaintiff's request and directed him to file his amended complaint within twenty (20) days.  (Doc. No. 2-3.)

Plaintiff filed his amended complaint on June 4, 2018.  (Doc. No. 2-4.)  In his amended complaint, Plaintiff alleges that on December 30, 2017, Defendants McHenry and Breese used excessive force against him, in violation of his Eighth Amendment rights, during a cell search.  (*Id.*)  He further maintains that: (1) Defendant McHenry violated his First Amendment right to access the courts by destroying certain legal documents; (2) Defendants McHenry and Breese violated his First Amendment rights by using excessive force in retaliation for Plaintiff's submission of grievances; (3) Defendant McHenry violated his Fourteenth Amendment due process rights and Eighth Amendment rights by issuing a false misconduct and placing him in pre-hearing segregation; (4) Defendants violated his Fourteenth Amendment right to equal protection; and (5) Defendants Probst and Garman failed to train and supervise their subordinates and also failed to protect him from Defendant McHenry and Breese's actions.  (*Id.*)

Defendants removed the above-captioned action to this Court on July 10, 2018.  (Doc. No. 1.)  They filed an answer to the amended complaint on July 17,

2

2018.  (Doc. No. 4.)  Subsequently, Plaintiff filed three motions for an order to subpoena SCI Rockview for evidence.  (Doc. Nos. 5, 9, 10.)  In a Memorandum Order dated January 15, 2019, Magistrate Judge Carlson granted in part Plaintiff's motions and directed Defendants to respond to Plaintiff's request for production of video evidence by February 15, 2019.  (Doc. No. 13.)  Magistrate Judge Carlson also directed that discovery be completed and that dispositive motions be filed by April 15, 2019.  (*Id.*)

Plaintiff subsequently filed notices that video evidence would not be necessary in this matter.  (Doc. Nos. 14, 15.)  Defendants filed their motion for summary judgment and supporting materials on April 15, 2019.  (Doc. Nos. 18, 19, 20.)  That same day, the Court received from Plaintiff a document titled "closing fact and final evidence which states a claim for which relief may be granted by non-moving party," to which Plaintiff attached several documents he refers to as affidavits.  (Doc. No. 21.)  On May 6, 2019, Plaintiff filed his brief in opposition to Defendants' motion for summary judgment.  (Doc. No. 23.)

## II.     STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) requires the court to render summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

"[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. *Id.* at 248; *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 257; *Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am.*, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether there is a genuine issue of material fact, the court must view the facts and all reasonable inferences in favor of the nonmoving party. *Moore v. Tartler*, 986 F.2d 682 (3d Cir. 1993); *Clement v. Consol. Rail Corp.*, 963 F.2d 599, 600 (3d Cir. 1992); *White v. Westinghouse Electric Co.*, 862 F.2d 56, 59 (3d Cir. 1988). In order to avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings. When the party seeking summary judgment satisfies its burden under Rule 56 of identifying evidence which demonstrates the absence of a genuine issue of material fact, the nonmoving party is required by Rule 56 to go beyond his pleadings with affidavits,

depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). When Rule 56 shifts the burden of production to the nonmoving party, that party must produce evidence to show the existence of every element essential to its case which it bears the burden of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. *See Harter v. G.A.F. Corp.*, 967 F.2d 846, 851 (3d Cir. 1992).

In determining whether an issue of material fact exists, the court must consider the evidence in the light most favorable to the nonmoving party. *White*, 826 F.2d at 59. In doing so, the Court must accept the nonmovant's allegations as true and resolve any conflicts in his favor. *Id.* (citations omitted). However, a party opposing a summary judgment motion must comply with Local Rule 56.1, which specifically directs the oppositional party to submit a "statement of the material facts, responding to the numbered paragraphs set forth in the statement required [to be filed by the movant], as to which it is contended that there exists a genuine issue

to be tried"; if the nonmovant fails to do so, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted." L.R. 56.1. A party cannot evade these litigation responsibilities in this regard simply by citing the fact that he is a *pro se* litigant. These rules apply with equal force to all parties. *See Sanders v. Beard*, No. 09-CV-1384, 2010 WL 2853261, at *5 (M.D. Pa. July 20, 2010) (*pro se* parties "are not excused from complying with court orders and the local rules of court"); *Thomas v. Norris*, No. 02-CV-01854, 2006 WL 2590488, at *4 (M.D. Pa. Sept. 8, 2006) (*pro se* parties must follow the Federal Rules of Civil Procedure).

## III.   STATEMENT OF MATERIAL FACTS[1]

---

[1] The Local Rules of Court provide that in addition to filing a brief in opposition to the moving party's brief in support of its motion, "[t]he papers opposing a motion for summary judgment shall include a separate, short and concise statement of material facts responding to the numbered paragraphs set forth in the statement [of material facts filed by the moving party] . . . as to which it is contended that there exists a genuine issue to be tried." M.D. Pa. L.R. 56. 1. The Rule further requires the inclusion of references to the parts of the record that support the statements. *Id.* Finally, the Rule states that the statement of material facts required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party. *See id.*

Unless otherwise noted, the background herein is derived from Defendants' Rule 56.1 statement of material facts. (Doc. No. 20.) While Plaintiff's brief in opposition to the motion for summary judgment contains a response to Defendants' statement of facts (*see* Doc. No. 230 at 4-5), Plaintiff has not fully complied with Local Rule 56.1 in that he failed to specifically respond to all the numbered paragraphs in Defendants' statement of material facts. To the extent Plaintiff's statement does not respond to the numbered paragraphs in Defendants' statement, those numbered paragraphs will be deemed admitted. *See, e.g., Liddick v. Tritt*, No. 1:14-CV-01813, 2017 WL 4211051, at *1 (M.D. Pa. Aug. 31, 2017) (concluding same), *Report and Recommendation adopted*, 2017 WL 4180111 (M.D. Pa. Sept. 21, 2017); *Joyner v. District of Columbia*, No. 04-cv-489, 2009 WL 2224757, at *3 n.5 (M.D. Pa. July 23, 2009) (deeming the moving party's statement of facts admitted where the non-moving party's response failed to provide individual responses to

The Pennsylvania Department of Corrections ("DOC") authorizes the use of force against an inmate "when a staff member reasonably believes such force is necessary to, among other things, protect oneself or others and/or to effect compliance with the rules and regulations when other methods of control are ineffective or insufficient." (Doc. No. 20 ¶ 1.) When force is used, the staff member must use the least amount of force he or she believes is "reasonably . . . necessary to achieve the authorized purpose" and must stop using force "once control is achieved." (*Id.* ¶ 2.) "Use of force is applied in accordance with a force continuum." (*Id.* ¶ 3.)

The DOC has a policy "prohibit[ing] the introduction and presence of unauthorized weapons, drugs, and other contraband by providing for searches of facilities and inmates to control contraband and provide for its disposition." (*Id.*

---

each of the numbered paragraphs contained therein). Moreover, while a verified complaint may be treated as an affidavit in opposition to a motion for summary judgment, *see Ziegler v. Eby*, 77 F. App'x 117, 120 (3d Cir. 2003), Plaintiff's amended complaint states only that he "declares under penalty of perjury" and does not indicate that the statements contained therein are true and correct. Thus, the Court will not consider the amended complaint as evidence to rebut Defendants' motion for summary judgment. *See* 28 U.S.C. § 1746; *see also Liddick*, 2017 WL 4211051, at *2 (concluding same). Finally, while Plaintiff has submitted several "affidavits" in support of his claims (Doc. No. 21 at 10-18), all of them state only that "the foregoing is true and correct" and are not signed under the penalty of perjury. Thus, the Court will not consider these "affidavits" as evidence to rebut Defendants' motion for summary judgment. Accordingly, unless otherwise noted, the Court deems the facts set forth by Defendants to be undisputed. *See* M.D. Pa. L.R. 56. 1; Fed. R. Civ. P. 56(e)(2); *Bowman v. Mazur*, Civ. No. 08-173J, 2010 WL 2606291, at *3 (W.D. Pa. Oct. 30, 2010) ("Plaintiff's responsive statement of material facts is insufficient to create a genuine issue of material fact because it failed to comply with Local Rule 56.1.").

¶ 4.)  The facility manager or his designee "may order a general search of any/all areas of the facility."  (*Id.* ¶ 5.)  Generally, Search Team members should perform a random cell search, but such can be performed by other staff as directed.  (*Id.* ¶ 6.)  Moreover, during a pat search, "every inmate is required to follow the verbal directions given by the staff member conducting the search."  (*Id.* ¶ 7.)

DOC policy also provides that "every rule violation is to be reported via a misconduct report."  (*Id.* ¶ 8.)  The misconduct "shall be written by the staff member who has personal knowledge of the rule violation."  (*Id.* ¶ 9.)  Moreover, any "planned or unplanned use of force incident is reported, documented, and reviewed." (*Id.* ¶ 10.)

On December 30, 2017, Captain Hardy "complied the information and reports necessary to finalize an Extraordinary Occurrence Report ('EOR')."  (*Id.* ¶ 11.)  The report indicated that on that date, Defendants McHenry and Breese arrived at Plaintiff's cell at 8:28 a.m. to conduct an investigate cell and pat search.  (*Id.* ¶ 12.) Plaintiff was the only occupant of the cell.  (*Id.* ¶ 13.)  Defendant McHenry directed Plaintiff "to stay away from the toilet and to remain motionless with his hands on the light bar."[2]  (*Id.* ¶ 14.)  While the pat search was conducted, Plaintiff threw pieces

---

[2] Plaintiff maintains that Defendant McHenry did not order him "to stay away from the toilet and to remain motionless with his hands on the light."  (Doc. No. 23 at 4.)

of paper into the toilet.  (*Id.* ¶ 15.)  Defendant Breese was unable to retrieve the paper but noted "there was toilet paper mixed with colored paper."  (*Id.* ¶ 16.)

By 8:31 a.m., Plaintiff had been handcuffed and removed from his cell.  (*Id.* ¶ 17.)  A search team subsequently arrived, "which later included a K-9 unit."  (*Id.* ¶ 18.)  When asked, Plaintiff stated that the "material in the toilet was just small scrap pieces of paper."  (*Id.* ¶ 19.)  The K-9 unit subsequently alerted on the cabinet in Plaintiff's cell "and it was suspected at the time that the contraband thrown into the toilet was suboxone."[3]  (*Id.* ¶ 20.)

Plaintiff was escorted to the Restricted Housing Unit ("RHU") about an hour later for processing.  (*Id.* ¶ 21.)  While being assessed by medical staff, Plaintiff alleged that Defendants McHenry and Breese had used excessive force against him.  (*Id.* ¶ 22.)  The nurse who assessed Plaintiff noted that he had a 3cm bruise on his forehead.[4]  (*Id.* ¶ 23.)  Defendant McHenry issued a misconduct report charging Plaintiff with refusing to obey an order and possession of contraband.  (*Id.* ¶¶ 24-25.)  "The date and time for pre-hearing confinement correlates to the date and time Plaintiff was placed in the RHU after being assessed by medical staff."  (*Id.* ¶ 26.)

---

[3] Plaintiff maintains that he "discarded . . . only a single piece of toilet paper into the toilet after showing and spreading it out; there [was] no unknown substance."  (Doc. No. 23 at 5.)

[4] Plaintiff states that there are no medical records showing wounds to his wrists from the tight handcuffs because "prison authority Lt. Wilt would not allow handcuffs to be removed."  (*Id.* at 4.)

## IV. DISCUSSION

As noted above, Plaintiff alleges that: (1) Defendants McHenry and Breese violated his Eighth Amendment rights by using excessive force against him; (2) Defendant McHenry violated his First Amendment right to access the courts by destroying certain legal documents; (3) Defendants McHenry and Breese violated his First Amendment rights by using excessive force in retaliation for Plaintiff's submission of grievances; (4) Defendant McHenry violated his Fourteenth Amendment due process rights by issuing a false misconduct and his Eighth Amendment rights placing him in pre-hearing segregation; (5) Defendants violated his Fourteenth Amendment right to equal protection; and (6) Defendants Probst and Garman failed to train and supervise their subordinates and also failed to protect him from Defendant McHenry and Breese's actions. (*Id.*) The Court considers each of Plaintiff's claims in turn below.

### A. Eighth Amendment Claims

#### 1. Excessive Force

The Eighth Amendment prohibits the infliction of cruel and unusual punishment on prisoners. An Eighth Amendment claim includes both objective and subjective components. *See Wilson v. Seiter*, 501 U.S. 294, 298 (1991). Serious hardship to the prisoner is required to satisfy the Eighth Amendment's objective

component. *See id.* The subjective component is met if the person or persons causing the deprivation acted with "a sufficiently culpable state of mind." *See id.*

The Eighth Amendment's protection against cruel and unusual punishment is the "primary source of substantive protection in cases where an inmate challenges a prison official's use of force as excessive and unjustified." *See Brooks v. Kyler*, 204 F.3d 102, 105 (3d Cir. 2000). The standard governing the Court's inquiry as to whether a plaintiff has a viable excessive force claim is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *See Giles v. Kearney*, 571 F.3d 318, 326 (3d Cir. 2009) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)).

Under proper circumstances, a court may determine the issue of whether excessive force was used as a matter of law. In such cases, summary judgment is appropriate when "it appears that the evidence, viewed in the light most favorable to the plaintiff, will [not] support a reliable inference of wantonness in the infliction of pain." *See Brooks*, 204 F.3d at 106 (quoting *Whitley*, 475 U.S. at 322). In making this determination, courts are tasked with evaluating the following *Whitley* factors:

> (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them;

and (5) any efforts made to temper the severity of a forceful response.

*Id.* The United States Supreme Court has stated:

> [W]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency are always violated . . . whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury.

*Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (quoting *Hudson v. McMillian*, 503 U.S. 1 (1992)).

When a court considers such claims, the reasonableness of a particular use of force often depends upon the relevant factual context and must be "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *See Graham v. Connor*, 490 U.S. 386, 396-97 (1989); *see also Fuentes v. Wagner*, 206 F.3d 335, 346 (3d Cir. 2000) ("[E]ven if we concede [that an inmate] has established at most that prison officials over-reacted to the disturbance that he caused . . . any such over-reaction would still fall short of supporting a finding that prison officials acted 'maliciously and sadistically to cause harm.'"). Additionally, *de minimis* use of physical force does not qualify as excessive force unless the force is "repugnant to the conscience of mankind." *See Brooks*, 204 F.3d at 107 (citing *Hudson*, 503 U.S. at 6); *see also Wilkins*, 559 U.S. 34 (2010) (clarifying that *de*

*minimis* force, rather than *de minimis* injury, is the dispositive issue). Not "every malevolent touch by a prison guard gives rise to a federal cause of action." *See Hudson*, 503 U.S. at 9.

Defendants assert that summary judgment is warranted because Defendants McHenry and Breese used force in "good-faith to maintain and restore discipline after Plaintiff refused a direct order." (Doc. No. 19 at 17.) In support of their arguments, Defendants have submitted: (1) a copy of DOC Policy DC-ADM 201, *Use of Force*; (2) a copy of DOC Policy DC-ADM 203, *Searches of Inmates and Cells*; (3) a copy of Doc Policy DC-ADM 801, *Inmate Discipline*; and (4) relevant portions of the December 30, 2017 EOR. (Doc. Nos. 19-1 to 19-4.) Plaintiff, however, alleges that Defendants McHenry and Breese repeatedly slammed his head against a table and twisted his arms so that the handcuffs cut into his wrists. (*See* Doc. No. 2-4.)

The record before the Court establishes that on December 30, 2017, Captain Hardy ordered that Plaintiff undergo a cell and pat search. (Doc. No. 19-4.) Defendants McHenry and Breese arrived at Plaintiff's cell and began to conduct the pat search. (*Id.*) Plaintiff was told to keep his hands on the wall and to stay away from the toilet. (*Id.*) During the pat search, Plaintiff threw pieces of paper into the toilet. (*Id.*) A minute later, Defendants McHenry and Breese placed Plaintiff in

13

handcuffs and placed him against the wall of the cell for control. (*Id.*) A few minutes later the search team arrived, followed by the K-9 unit. (*Id.*) During the search of Plaintiff's cell, the K-9 unit alerted to the cabinet. (*Id.*) Plaintiff was subsequently escorted to the RHU and medically assessed by LPN Silks. (*Id.*) LPN Silks noted that Plaintiff had a 3cm bruise on the right side of his forehead. (*Id.*)

Viewing the evidence in the light most favorable to Plaintiff does not permit the Court to conclude that it "support[s] a reliable inference of wantonness in the infliction of pain." *Brooks*, 204 F.3d at 106. Upon consideration of the *Whitley* factor set forth above, Defendant McHenry and Breese perceived the need for a use of force because Plaintiff ignored the order to stay away from the toilet during the pat search. Defendant McHenry used a control technique—placing Plaintiff against the wall and applying handcuffs—to ensure that Plaintiff complied with direct orders. Plaintiff's medical assessment revealed that he had only a 3cm bruise on the right side of his forehead, and Defendants McHenry and Breese reasonably perceived a threat based upon Plaintiff's act of throwing pieces of paper into the toilet. Finally, the record establishes that Defendants tempered the response by immediately removing Plaintiff from his cell and placing him outside during the cell search. While Plaintiff alleges in his amended complaint that Defendants McHenry and Breese used excessive force and submitted "affidavits" in support of his claims,

14

as noted *supra*, the Court has not considered those documents as evidence to rebut Defendant's motion for summary judgment because the amended complaint does not indicate that the statements contained therein are true and correct and the "affidavits" are not signed under the penalty of perjury. Accordingly, because the record demonstrates that Defendants McHenry and Breese did not use excessive force and used force in good faith to restore discipline after Plaintiff disobeyed a direct order, the Court will grant summary judgment to Defendants with respect to Plaintiff's Eighth Amendment excessive force claim.

## 2. Placement in Pre-Hearing Segregation

The Eighth Amendment's prohibition of cruel and unusual punishment imposes duties on prison officials to provide prisoners with the basic necessities of life, such as food, clothing, shelter, sanitation, medical care, and personal safety. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Helling v. McKinney*, 509 U.S. 25, 31 (1993). It is well settled that prison conditions constitute cruel and unusual punishment if they result in serious deprivations of basic human needs. *See Tillman v. Lebanon Cty. Corr. Facility*, 221 F.3d 410 (3d Cir. 2000). A condition of confinement implicates the Eighth Amendment if it is so reprehensible as to be deemed inhumane under contemporary standards or deprives an inmate of minimal civilized measures of the necessities of life. *See Hudson v. McMillian*, 503 U.S. 1,

8 (1992); *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). However, the Eighth Amendment does not mandate that prisons be free of discomfort. *Farmer*, 511 U.S. at 33 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)).

Under *Farmer*, an inmate must surmount the high hurdle of showing that a prison official actually knew or was aware of a substantial risk to inmate safety and deliberately disregarded that risk. *Beers-Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001). This requirement of actual knowledge means that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

Plaintiff maintains that Defendant McHenry violated his Eighth Amendment rights by confining him in the RHU prior to his misconduct hearing. (Doc. No. 2-4 at 3.) Segregation, however, "is not per se a violation of the Eighth Amendment." *See Russell v. City of Philadelphia*, 428 F. App'x 174, 177 n.2 (3d Cir. 2011). Moreover, nothing in the record before the Court indicates that Plaintiff's confinement in the RHU "differed from the norm" in a way that would violate the Eighth Amendment. *See id.* (citing *Griffin v. Vaughn*, 112 F.3d 703, 709 (3d Cir. 1997). Plaintiff simply has not demonstrated that his placement in the RHU deprived him of "the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Accordingly, the Court will grant summary judgment to

16

Defendants with respect to Plaintiff's Eighth Amendment claim concerning pre-hearing placement in segregation.

## B.     First Amendment Claims

### 1.     Denial of Access to the Courts

"Under the First and Fourteenth Amendments, prisoners retain a right of access to the courts." *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008). There are two (2) general categories of actionable access to the courts claims. *See Christopher v. Harbury*, 536 U.S. 403, 413 (2002). "In the first are claims that systemic official action frustrates a plaintiff or plaintiff class in preparing and filing suits at the present time." *Id.* The second category "do[es] not look forward to a class of future litigation, but backward to a time when specific litigation ended poorly, or could not have commenced, or could have produced a remedy subsequently unobtainable." *Id.* To establish a claim for denial of access to the courts, Plaintiff must demonstrate that his access was impaired and that he suffered actual injury because of Defendants' actions. *See Jones v. Brown*, 461 F.3d 353, 359 (3d Cir. 2006). To establish an actual injury, an inmate must demonstrate that a non-frivolous legal claim was frustrated or impeded. *See Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Monroe*, 536 F.3d at 206 (observing that a "claim rest[ing] solely on the ground that the defendants confiscated . . . legal materials" is

insufficient on its face to support a denial of access to the courts claim). Moreover, "prisoners may only proceed on access-to-courts claims in two types of cases, challenges (direct or collateral) to their sentences and conditions of confinement." *Id.* at 205 (citing *Lewis*, 518 U.S. at 354-55).

In the instant case, Plaintiff alleges that when Defendant McHenry conducted a cell search after Plaintiff was taken to the RHU, he destroyed the following legal documents: (1) a document in a matter before the Department of State; (2) a draft complaint against the City of Philadelphia; (3) a document to be filed pertaining to a matter pending in the United States Court of Appeals for the Third Circuit seeking leave to file a second or successive habeas petition; (4) a document in an action against SCI Rockview; and (5) a petition to be filed in Pennsylvania's Commonwealth Court. (Doc. No. 2-4 at 3, 6.) However, nothing in the record before the Court establishes that Plaintiff suffered any actual injury in a case challenging his sentence or conditions of confinement.[5] Plaintiff cannot simply rely on his

---

[5] In his amended complaint, Plaintiff references "docket #3666" with respect to the matter he had pending before the Third Circuit at the time. A review of public dockets reveals that on December 8, 2017, Plaintiff had applied for leave to file a second or successive habeas petition pursuant to 28 U.S.C. § 2244(b). *In re Julio Christian*, No. 17-3666 (3d Cir.). That same day, the Third Circuit issued an Order directing Plaintiff to submit additional documentation within twenty-one (21) days. *Id.* On December 18, 2017, Plaintiff filed a "Notice of Cancellation" that the Third Circuit construed as a motion to dismiss his pending proceedings. *Id.* On December 19, 2017, the Third Circuit dismissed the proceedings pursuant to Rule 42(b) of the Federal Rules of Appellate Procedure. *Id.* Plaintiff's choice to discontinue these proceedings certainly does not indicate that he suffered actual injury from the loss of any documents. Moreover, Plaintiff fails to identify any actual injury suffered from the loss of the other documents referenced in his amended complaint.

allegations that Defendant McHenry destroyed various documents to sustain his claim. *See Monroe*, 536 F.3d at 206. Accordingly, the Court will grant summary judgment to Defendants with respect to this claim.[6]

### 2. Retaliation

To state a retaliation claim under the First Amendment, a plaintiff bears the burden of satisfying three (3) elements. First, a plaintiff must prove that he was engaged in a constitutionally protected activity. *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001). Second, a plaintiff must demonstrate that he "suffered some 'adverse action' at the hands of prison officials." *Id.* (quoting *Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000)). This requirement is satisfied by showing adverse action "sufficient 'to deter a person of ordinary firmness' from exercising his First Amendment rights." *Id.* (quoting *Suppon v. Dadonna*, 2013 F.3d 228, 235 (3d Cir. 2000)). Third, a prisoner must prove that "his constitutionally protected conduct was 'a substantial or motivating factor' in the decision to discipline him." *Rauser*, 241 F.3d at 333-34 (quoting *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

---

[6] To the extent Plaintiff alleges that the cell search and seizure of his property violated his Fourth Amendment rights, "he has no reasonable expectation of privacy in his cell." *Washington v. Grace*, 445 F. App'x 611, 615-16 (3d Cir. 2011) (citing *Hudson v. Palmer*, 468 U.S. 517, 526 (1984)).

The mere fact that an adverse action occurs after either a complaint or grievance is filed is relevant, but not dispositive, for the purpose of establishing a causal link between the two events. *See Lape v. Pennsylvania*, 157 F. App'x 491, 498 (3d Cir. 2005). Only when the facts of a particular case are "unusually suggestive" of a retaliatory motive will temporal proximity, on its own, support an inference of causation. *See Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 503 (3d Cir. 1997). The Third Circuit has noted that an inmate can satisfy this burden "with evidence of either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action or (2) a pattern of antagonism coupled with timing that suggests a causal link." *Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2002).

If a prisoner establishes a *prima facie* case of retaliation, the burden shifts to prison officials to show, by a preponderance of the evidence, that "they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." *Rauser*, 241 F.3d at 334. "This is often referred to as the 'same decision defense.'" *Watson*, 834 F.3d at 422. If the prison officials can make this showing, it defeats the retaliation claim. *See Carter v. McGrady*, 292 F.3d 152, 159 (3d Cir. 2002).

In his amended complaint, Plaintiff alleges that Defendants McHenry and Breese retaliated against him for using the prison grievance system by searching his cell and using excessive force against him. (Doc. No. 2-4 at 9.) He suggests that the retaliation occurred "upon [the] filing of [an] informal grievance which caused Defendant Breese to be transferred to 3rd shift." (Doc. No. 21 at 2.) Defendants concede that the filing of grievances does constitute protected activity. (Doc. No. 19 at 25); *see also Mearin v. Vidonish*, 450 F. App'x 100, 102 (3d Cir. 2011). Defendants argue, however, that Plaintiff has not established either that adverse action was taken by Defendants against him or the existence of a causal connection between such adverse action and Plaintiff's protected activity. (Doc. No. 19 at 25-30.) The Court considers these arguments in turn below.

To be actionable under § 1983, the adverse action "need not be great" but "must be more than *de minimus*." *See McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006). While cell searches are a routine part of prison life, *Hudson v. Palmer*, 468 U.S. 517, 526-27, it does not mean that searches which constitute "calculated harassment unrelated to prison needs" are permissible." *Id.* at 530. Thus, a cell search, and the resulting confiscation of property, may nonetheless constitute adverse action "if motivated solely by a retaliatory motive." *Hernández-Tirado v. Lowe*, No. 3:CV-14-1897, 2017 WL 3433690, at *10 (M.D. Pa. Aug. 10, 2017).

Likewise, the use of force can constitute adverse action. *See Hatten v. Bledsoe*, No. 1:13-CV-209, 2014 WL 5473571, at \*15 (M.D. Pa. Aug. 4, 2014), *Report and Recommendation adopted*, 2014 WL 5474071 (M.D. Pa. Oct. 28, 2014). Thus, Plaintiff has satisfied the second prong of a retaliation claim.

As noted above, Defendants also argue that Plaintiff has not demonstrated a causal connection between these actions and his act of filing grievances. (Doc. No. 19 at 25.) Upon review of the record, the Court agrees with Defendants that Plaintiff has not provided any evidence establishing when he filed grievances that would permit the Court to conclude that a causal link exists. Moreover, nothing before the Court would permit a finding that Defendants were aware of any grievances submitted by Plaintiff. *See Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 196-97 (3d Cir. 2015) (noting that a plaintiff "cannot establish that there was a causal connection without some evidence that the individuals responsible for the adverse action knew of the plaintiff's protected conduct at the time they acted"); *Whitehead v. Rozum*, No. 09-220J, 2012 WL 4078422, at \*6 (W.D. Pa. Aug. 14, 2012) (concluding that the inmate-plaintiff had failed to demonstrate that corrections officers were "aware of his filing of . . . grievances such as to establish any motivating factor"), *Report and Recommendation adopted*, 2012 WL 4086717 (W.D. Pa. Sept. 17, 2012). Thus, because Plaintiff has not established that Defendants' actions were taken in

retaliation for his engaging in protected activity, the Court will grant summary judgment to Defendants with respect to this claim.

## C. Fourteenth Amendment Claims

### 1. Equal Protection

The Equal Protection Clause requires all persons "similarly situated" to be treated alike by state actors. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Traditionally, "[i]n order to establish a *prima facie* case of discrimination under the Equal Protection Clause, [plaintiffs] need[] to prove that they were members of a protected class [such as race or gender] and that they received different treatment than that received by similarly-situated individuals." *See Oliveira v. Twp. of Irvington*, 41 F. App'x 555, 559 (3d Cir. 2002).

However, where a plaintiff alleges that he alone "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment," he may raise a "class of one" equal protection claim. *See Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 598 (2008). To maintain such a claim, a plaintiff must establish that he has been irrationally singled out for disparate treatment. *See id.* "[A]t the very least, to state a claim under [a class of one theory], a plaintiff must allege that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational

23

basis for the difference in treatment." *Mosca v. Cole*, 217 F. App'x 158, 164 (3d Cir. 2007). When establishing the existence of similarly situated individuals, plaintiffs "cannot use allegations . . . that amount to nothing more than 'conclusory, boilerplate language' to show that he may be entitled to relief," and "bald assertion[s] that other[s] . . . were treated in a dissimilar manner" will not suffice. *See Young v. New Sewickley Twp.*, 160 F. App'x 263, 266 (3d Cir. 2005) (citing *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005)).

Here, Plaintiff maintains that he was "personally singled out for disparate treatment" and that "other inmates of different races or national origin were treated differently in similar circumstances." (Doc. No. 2-4 at 4.) Plaintiff, however, provides no evidence concerning his race or national original, nor has he provided any evidence that inmates of races and national origins different than his were treated differently. Nothing in the record before the Court, however, suggests that Defendants intentionally treated Plaintiff differently from other inmates or treated other inmates more favorably in any respect. Plaintiff's allegations that his equal protection rights were violated are simply "bald assertions" that fail to allege "occasions and circumstances" of different treatment. *See Young*, 160 F. App'x at 266. Accordingly, the Court will grant Defendants summary judgment as to Plaintiff's equal protection claims.

## 2.     Procedural Due Process

The Court's liberal reading of Plaintiff's amended complaint suggests that Plaintiff may also be raising a Fourteenth Amendment due process claim alleging that Defendant McHenry brought false misconduct charges against him.  The Third Circuit has recognized that "[p]rison disciplinary proceedings may . . . constitute a denial of due process in the context of a civil rights action under § 1983 when they are instituted for the sole purpose of retaliating against an inmate for his/her exercise of a constitutional right."  *Smith v. Mensinger*, 293 F.3d 641, 653 (3d Cir. 2002).  Such a procedural due process claim requires threshold proof that the inmate was engaged in constitutionally protected conduct.  *See id.* (citing *Sandin v. Conner*, 515 U.S. 472, 486 (1995)); *see also Allah v. Seiverling*, 229 F.3d 220, 224 (3d Cir. 2002).  However, even if the discipline is initiated in retaliation for a protected act, due process is satisfied where the plaintiff has an opportunity to confront and challenge the retaliatory misconduct reports.  *See Smith*, 293 F.3d at 653-54; *see also Thomas v. McCoy*, 467 F. App'x 94, 97 (3d Cir. 2012) (per curiam) ("Due process is satisfied where an inmate is afforded an opportunity to be heard and to defend against the allegedly false misconduct reports.").  Defendants have not addressed Plaintiff's claim regarding the allegedly false misconduct in the context of procedural due process, and at this juncture, the Court cannot properly consider the issue absent

briefing from the parties on the issue. Accordingly, the Court will deny Defendants' motion for summary judgment without prejudice to their right to file a renewed motion addressing Plaintiff's procedural due process claim in the context of the standard set forth above.

### D. Failure to Train and Supervise Claims

Finally, Plaintiff alleges that Defendants Probst and Garman failed to train and supervise their subordinates and failed to protect him from the use of force. (Doc. No. 2-4 at 4, 7.) He maintains that Defendant Probst failed to discipline Defendants Breese and McHenry for their conduct. (*Id.* at 4.) Plaintiff also alleges that he had previously reported that he was having problems with Defendants McHenry and Breese to Defendant Garman. (*Id.* at 7.) These problems included block card issues initiated by Defendant McHenry. (*Id.*) Plaintiff alleges that Defendant Garman was, therefore, able to infer a substantial risk of harm to him. (*Id.*)

Supervisors cannot be held liable under § 1983 on the traditional standard of *respondeat superior.* *See Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010). Instead, there are two theories of supervisory liability that are applicable to § 1983 claims: (1) "a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as

the person in charge, had knowledge of and acquiesced in his subordinates' violations"; and (2) policymakers may also be liable under § 1983 "if it is shown that such defendants, 'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm.'" *See A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004). "[T]he plaintiff must establish that: (1) existing policy or practice creates an unreasonable risk of constitutional injury; (2) the supervisor was aware that the unreasonable risk was created; (3) the supervisor was indifferent to that risk; and (4) the injury resulted from the policy or practice." *Merring v. City of Carbondale*, 558 F. Supp. 2d 540, 547 (M.D. Pa. 2008) (citing *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989)). Moreover, for a failure to train claim, the plaintiff "must identify a failure to provide specific training that has a causal nexus with [his] injuries and must demonstrate that the absence of that specific training can reasonably be said to reflect a deliberate indifference to whether the alleged constitutional deprivations occurred." *Reitz v. Cty. of Bucks*, 125 F.3d 139, 145 (3d Cir. 1997).

Here, nothing in the record before the Court establishes that Defendants Probst and Garman were involved in the incident between Plaintiff and Defendants McHenry and Breese. Plaintiff merely alleges that Defendant Probst was notified of

the incident; he provides no evidence of a policy, practice, or custom that caused the alleged Eighth Amendment violation and provides no evidence that Defendants Probst and Garman participated in, directed others, or had knowledge of violations of Plaintiff's rights. Furthermore, Plaintiff provides no evidence identifying a failure to provide specific training that is causally connected to his alleged injuries. Accordingly, Defendants are entitled to summary judgment with respect to Plaintiff's failure to train and supervise claims.

Plaintiff also suggests that Defendants Probst and Garman failed to protect him from the use of force by Defendants McHenry and Breese. (Doc. No. 2-4 at 7.) The Third Circuit has held "that a corrections officer's failure to intervene in a beating can be the basis of liability for an Eighth Amendment violation under § 1983 if the corrections officer had a reasonable opportunity to intervene and simply refused to do so." *Smith*, 293 F.3d at 650. An officer, however, "is only liable if there is a realistic and reasonable opportunity to intervene." *Id.* at 651. Plaintiff alleges that he had previously reported problems with Defendants Breese and McHenry, including issues with block cards, to Defendant Garman, and suggests that these reports were enough for Defendant Garman to infer a substantial risk of harm to Plaintiff. (Doc. No. 2-4 at 7.) Nothing in the record before the Court, however, would permit a conclusion that Defendants McHenry and Breese had a

history of using force against Plaintiff or that Plaintiff warned Defendants Garman and Probst that he thought he was in danger. Likewise, nothing suggests that Defendants Garman and Probst had a "realistic and reasonable" opportunity to intervene in the use of force against Plaintiff. Accordingly, Defendants are entitled to summary judgment with respect to Plaintiff's failure to intervene claim.

## V. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment (Doc. No. 18) will be granted in part and denied in part. The motion will be granted with respect to Plaintiff's claims alleging excessive force, placement in pre-hearing segregation, denial of access to the courts, retaliation, equal protection violations, and failures to train, supervise, and protect. With respect to Plaintiff's procedural due process claim regarding the allegedly false misconduct, the motion will be denied without prejudice. Defendants will be permitted to file a second motion for summary judgment that addresses this claim in the context of the standard set forth above. An appropriate Order follows.

s/Sylvia H. Rambo
Sylvia H. Rambo
United States District Judge

Dated: October 24, 2019